# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:24-CV-00247-KDB

| | |
|---|---|
| DAVID LEE STONE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff David Lee Stone's appeal of an unfavorable administrative decision denying his application for disability insurance benefits under the Social Security Act. (Doc. No. 5). Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Mr. Stone Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## I.     PROCEDURAL BACKGROUND

On October 4, 2021, Mr. Stone applied for disability insurance benefits under Title II of the Social Security Act, alleging that he had been disabled since September 15, 2019. Doc. No. 2-3 at 8. His claim was denied initially and upon reconsideration. Doc. No. 2-4 at 3, 9. Mr. Stone then requested a hearing before an Administrative Law Judge ("ALJ"), where he was represented by counsel. Doc. No 2-2 at 18. After conducting the hearing, ALJ Angela Neel denied Mr. Stone's application in a decision dated August 16, 2023. Doc. No. 2-3 at 29. Mr. Stone sought review by the Appeals Council (the "AC"), which on February 5, 2024, granted his request for review and

remanded the matter back to the ALJ for a new hearing. *Id.* at 50. After the hearing, the ALJ again denied Mr. Stone's application in a decision dated July 15, 2024. Doc. No. 2-2 at 33. The AC denied Mr. Stone's request for review, thus, the ALJ's determination stands as the final decision of the Commissioner. Mr. Stone now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Mr. Stone was disabled during the relevant period.[1] "Disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *O'Dell v. Saul*, No. 5:20-CV-00048, 2021 WL 1233480, at *1 (W.D.N.C. Apr. 1, 2021) (quoting 20 C.F.R § 404.1505(a)).

At step one, the ALJ found that Mr. Stone was not currently engaged in substantial gainful activity and had not done so since September 15, 2019, the alleged onset date of his disability. Doc. No. 2-2 at 21. While Mr. Stone did work after the alleged disability onset date, the ALJ found that none of this work activity rose to the level of substantial gainful activity. *Id.* At step two, the ALJ found that Mr. Stone had the following severe impairments: "degenerative disc disease of the

---

[1] The ALJ must determine under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

spine and lumbar spinal stenosis; essential hypertension; diabetes mellitus; depressive disorder; and nicotine dependence." *Id.* At step three, the ALJ found that none of Mr. Stone's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 404.1520(d), 404.1526). Doc. No. 2-2 at 23.

Before proceeding to step four, the ALJ found that Mr. Stone had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 416.967(b) except no climbing ladders, ropes, and scaffolds; occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling; frequent balancing; frequent overhead work activity and no operating foot controls; no work at unprotected heights; and mentally limited to performing simple tasks.

Doc. No. 2-2 at 25.

At step four, the ALJ found that Mr. Stone was unable to perform any past relevant work as a machine maintenance servicer, janitor, and material handler. *Id.* at 31. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Mr. Stone could perform based on his age, education, work experience, and RFC. *Id.* at 32–33. These jobs included cashier II, marker, and routing clerk. *Id.* at 32. The VE further testified that if needing to alternate between sitting and standing, the jobs of cashier II, assembler of electrical accessories, and ticket seller would be available. *Id.* at 32–33. Thus, the ALJ found that Mr. Stone was not disabled under the Social Security Act from September 15, 2019, through March 31, 2022, his date last insured ("DLI"). *Id.* at 33.

## III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020).

3

The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'

*Biestek v. Berryhill*, 587 U.S. 97, 98–99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 103 (citation modified). Accordingly, this Court does not review a final decision of the Commissioner *de novo, Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (citation modified); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean." '... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

4

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "the reviewing court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.* (citation modified); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

### IV.  DISCUSSION

Mr. Stone urges the Court to overturn the ALJ's findings of no disability or remand his case, alleging that the ALJ erred by assessing his subjective complaints of pain under an improper standard and by finding Mr. Stone has the RFC to perform light work. *See*. Doc. No. 6.

#### A.  Evaluation of Mr. Stone's Subjective Statements

Mr. Stone first alleges that ALJ did not adequately evaluate his subjective complaints about the intensity, persistence, and limiting effects of his symptoms. *See* Doc. No. 6 at 3. Specifically, Mr. Stone asserts that the ALJ violated both *Oakes v. Kijakazi*, 70 F.4th 207 (4th Cir. 2023) and

5

*Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020) by ignoring medical evidence that allegedly corroborates Mr. Stone's subjective statements as to his back pain. *See* Doc. No. 6 at 3–7.

The Fourth Circuit has held that if a plaintiff's "medically determinable impairment(s) ... could reasonably be expected to produce [the plaintiff's] symptoms," 20 C.F.R. § 404.1529(c), which the ALJ found here, the plaintiff may "rely exclusively on subjective evidence to prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working." *Oakes*, 70 F.4th at 215 (quoting *Arakas,* 983 F.3d at 96) (alterations in original). Accordingly, while contradictory evidence may discredit Mr. Stone's subjective statements regarding the limiting effects of his impairments, a mere absence of medical evidence does not. Further, while a claimant's subjective statements "may not be discredited solely because they are not substantiated by objective evidence … they need not be accepted to the extent to the extent they are inconsistent with the available evidence." *Snyder v. Comm'r of Soc. Sec.,* No. 1:23-CV-00308-KDB, 2024 WL 5040933, at *5 (W.D.N.C. Dec. 9, 2024) (quoting *Shelby D. v. Kijakazi*, No. 3:22-CV-00234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023)) (citation modified).

Although Mr. Stone's subjective complaints of back pain are extensive, *see* Doc. No. 2-2 at 26, the ALJ found they conflict with the objective and other evidence in the record, an issue that the ALJ addressed throughout the decision. Mr. Stone claims that his disability began on September 15, 2019, yet he continued working until February 2020. Doc. No. 2-2 at 49–50. Mr. Stone also reported that since he stopped working, he "couldn't do hardly anything" because he was "in so much pain." *Id.* at 50. Despite this, the ALJ notes that medical visits and physicians notes in 2019 and 2020 indicated Mr. Stone could walk normally and stand without difficulty. Doc. Nos. 2-2 at 29; 2-9 at 24, 30, 42.

In February 2021, Mr. Stone had surgery on his back to address his spinal issues and manage his pain. *See* Doc. No. 2-8 at 679–682. Following surgery, in March 2021, Mr. Stone participated in physical therapy, reported that he was doing well and was taking only minimal pain medications. Doc. No. 2-2 at 27, 29; 2-8 at 211. However, an orthopedic nurse practitioner also noted that Mr. Stone was at times noncompliant with post-operative restrictions, which then triggered back pain and symptoms. Doc. No. 2-2 at 29. As an example, just two months after surgery, he drove his tractor and aggravated his back after twisting and looking over his shoulder. Doc. No. 2-2 at 30. Shortly thereafter, Mr. Stone carried a heavy couch up a ramp, which again caused back pain, and he went to the ER for evaluation. *Id.* The ALJ noted that these "activities exacerbated [Mr. Stone's] back pain and likely contributed to worsening" of his condition, and accounted for them by determining that "work activities beyond the light level would be precluded." *Id.* By June 2021, Mr. Stone reported being able to mow without back or leg pain and reported that Tramadol and Gabapentin "significantly help[ed] with [his] pain/symptoms." *Id.*

In December 2021, Mr. Stone had a second back surgery. *Id.* at 541. Following the surgery, Mr. Stone stated that he felt improvement and his pain was well managed with ibuprofen and Tramadol, Doc. No. 2-8 at 48, 60, 504, although at his hearing in 2024, he alleged that the surgery did not alleviate his pain and that it was the same or worse than prior to surgery. Doc. No. 2-2 at 52. He further said that his left leg was numb from the knee down, that it often felt like it was itching or burning, and that he had difficulty with everyday tasks such as sleeping, putting on clothes, using the bathroom, and sitting or standing for too long. *Id.* at 53, 55, 56, 57, and 83. However, The ALJ addressed his reports and noted that Mr. Stone can still usually perform these tasks on his own, "with some help at times." *Id.* at 26, 29. Later, in March 2022, Mr. Stone again reported that his pain was managed with medications. *Id.* at 27.

Also, to the extent that Mr. Stone alleges that the ALJ improperly considered his cane usage, SSR 96-9p directs ALJs to evaluate whether a cane is medically necessary, explaining that there "must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed," and the ALJ must "always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7. As the ALJ noted, the record reflects that Mr. Stone did not require the use of a cane for "most of the time during the period at issue," and indeed, the record reflected only intermittent cane usage. Doc. No. 2-2 at 30, 40.

A careful reading of the ALJ's analysis reveals that she weighed Mt. Stone's subjective complaints against other record evidence in a manner permissible under *Oakes* and *Arakas*. *See Audlica D. v. Kijakazi*, No. CV 22-1046-BAH, 2023 WL 1769665 (D. Md. Feb. 3, 2023) (explaining that the ALJ's analysis was consistent with *Arakas* when it considered the claimant's qualifying statements about pain and other evidence documenting improvement in symptoms). Moreover, *Arakas* holds that "ALJs may not rely on objective medical evidence (or the lack thereof) ... to discount a claimant's subjective complaints regarding symptoms of ... some disease *that does not produce such evidence*." 983 F.3d at 97 (emphasis added). *See also Oakes,* 70 F.4th at 215 (the ALJ is required to consider "the entire case record, including the claimant's subjective statements about intensity, persistence, and limiting effects of symptoms—even if objective medical evidence does not substantiate them.").

Mr. Stone does not suggest that his subjective complaints relate to a disease that fails to present objective evidence of its existence. Multiple scans and medical evidence led the ALJ to find Mr. Stone's degenerative disc disease and spinal stenosis to be a severe medically determinable impairment and, thus, informed the ALJ's decision to include multiple limitations in

the RFC. The ALJ based her conclusion on Mr. Stone's subjective complaints of pain; his reported improvements with treatment; his noncompliance after surgery; his own statements, including qualifying statements regarding the extent to which he can perform activities of daily living (along with other activities); and on objective and other medical evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) (noting that, generally, "objective medical evidence and other objective evidence [are] crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [a claimant's] ability to work"). As such, the Court finds that the ALJ properly evaluated Mr. Stone's symptoms.

And, while the record presents conflicting evidence, it is not in the Court's purview to second guess the ALJ or reweigh the evidence. *See Drumgold v. Comm'r of Soc. Sec.*, ___ F.4th___; No. 24-1394, 2025 WL 2017232, at *5 (4th Cir. July 18, 2025) (holding that because the ALJ is the trier of fact, the duty to resolve conflicting medical evidence lies with the ALJ, and explaining that when the ALJ "does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake.").

### B. Evaluation of Mr. Stone's RFC and Daily Activities

Mr. Stone next claims that substantial evidence "does not support the ALJ's finding that [Mr. Stone] has the RFC to perform light work." Doc. No. 6 at 7. Specifically, Mr. Stone asserts that the ALJ overstated Mr. Stone's daily activities to conclude that he could perform light work. *Id.* at 7–8. Conversely, the Commissioner contends that the ALJ properly considered Mr. Stone's daily activities in the RFC assessment. *See* Doc. No. 8 at 14–17.

A Social Security claimant's RFC is "the most the claimant can still do despite physical and mental limitations." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)). ALJs "may consider daily activities when evaluating symptoms, including pain."

*Oakes*, 70 F.4th at 216 (citing 20 C.F.R. § 404.1529(c)(3)(i)). Further, "while it is true that ALJs should not penalize claimants for 'attempting to lead normal lives in the face of their limitations,' that does not mean that a claimant's activities may not be considered as part of the totality of the evidence." *Drumgold,* 2025 WL 2017232, at *7 (quoting *Oakes*, 70 F.4th at 216).

Here, the ALJ considered Mr. Stone's daily activities as a part of the totality of the evidence to determine that he could perform light work. The ALJ determined that Mr. Stone had the RFC to perform work at the light exertional level with additional limitations, restricting him to

> occasional postural activities except frequent balancing, but no climbing ladders, ropes, and scaffolds, frequent overhead work, no operating foot controls with the left foot or a motor vehicle, no work around hazardous, moving mechanical parts, or at unprotected heights, consistent with the claimant's lumbar degenerative disc disease with radiculopathy and spinal stenosis.

Doc. No. 2-2 at 28.

The ALJ explained the RFC determination by citing to evidence in the record, including Mr. Stone's ability to do his own activities of daily living (some with assistance), engagement in work for six months after the alleged disability onset date, along with other "activities that were contrary to a claim for disability," such as driving a tractor, mowing, and moving heavy furniture. *Id.* at 21, 24, 29–30. The Fourth Circuit has held that an ALJ errs in "extrapolating from daily and life activities that a claimant has an increased residual functional capacity." *Oakes*, 70 F.4th at 216 (quoting *Arakas*, 983 F.3rd at 100). However, here, the ALJ fairly considered Mr. Stone's daily and life activities (and, indeed, his subjectively reported symptoms) and placed additional restrictions on Mr. Stone because they were "reasonable and necessary to minimize [his] symptoms and for safety concerns" due to his two back surgeries, "residual symptoms" of these surgeries, and his previous medical history before the disability period. Doc. No. 2-2 at 29.

Additionally, after considering the opinions of state agency medical consultants, the ALJ found them unpersuasive, determining that Mr. Stone was "more limited" than their findings, because the findings "did not adequately consider [Mr. Stone's] subjective complaints or the combined effects of his impairments." *Id.* at 30–31. However, the ALJ noted that Mr. Stone was not precluded from all work because certain medications "significantly helped" with his pain and symptoms. *Id.* at 30. Taken as a whole, the ALJ did not extrapolate or "cherry-pick" activities to find that Mr. Stone has the RFC to perform light work and instead considered the entire record. Thus, as required, the ALJ built a "logical bridge" from the objective and subjective medical evidence to her findings. *Woods v. Berryhill,* 888 F.3d 686, 694 (4th Cir. 2018).

Finally, as in *Drumgold*, there was conflicting evidence that the ALJ resolved, and it is beyond the permissible role of this Court to reweigh the evidence or substitute its judgment for the ALJ's. Further, the ALJ did not ignore Mr. Stone's subjective complaints; rather, she considered them along with all the other evidence in developing her RFC (which contains numerous limitations).

For the foregoing reasons, Mr. Stone's appeal will be denied and the ALJ's decision will be affirmed.

## V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal (Doc. No. 5) is DENIED and the Commissioner's decision is AFFIRMED.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 29, 2025

Kenneth D. Bell
United States District Judge